# Thierolf *versus* The Universal Fire Insurance Company.

1. A waiver of the stipulation in a policy of insurance, as to the time within which the insured is required to furnish proofs of loss, may be inferred from the acts of the officers of the company in receiving informal verbal proofs, and showing a recognition of liability on their part.

2. Where a policy of insurance required formal proofs of loss to be forwarded within thirty days, and the evidence disclosed that the insured called at the office of the company two days after the fire and gave the officers a description of the personal property destroyed, which was taken down in writing by the secretary; that the president went to the premises, inquired about the cost of rebuilding and promised to meet the insured there with a builder, which he failed to do; that in answer to several letters from the insured asking for a settlement, the company sent to the insured on the 29th day after the fire a copy of the by-laws prescribing the proceedings in case of loss; and that proofs were made out, complying substantially with the requirements of the policy, forwarded to the company and received by them thirty-three days after the loss:

    *Held,* that there was sufficient evidence to submit to the jury of a waiver by the company of formal proofs and of the limitation of time in which the proofs were to be forwarded.

3. The clause in the proofs of loss " that any misrepresentation in any statement touching the loss, or any false swearing on the part of the assured . . . . . in the proofs of loss or otherwise, shall cause a forfeiture," contemplates fraud or wilful misrepresentation, and does not include an honest mistake in failing to return an incumbrance which the insured did not believe to be a lien on the property insured.

4. If an insurance company is not satisfied with the proofs of loss, they must be returned with a specification of the defects.

April 28th, 1885.  Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ.,  TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Bucks county:* Of January Term 1885, No. 173.

Covenant, by Philip Thierolf against the Universal Fire Insurance Company on a policy of fire insurance to recover damages for loss sustained by plaintiff in the destruction of his property by fire.  Plea, covenants performed, absque hoc.

On the trial, before YERKES, P. J., the following facts appeared: Thierolf, the plaintiff, upon the solicitation of the president of defendant company, agreed to take out a policy of insurance for $3500 upon his mill properties, said insurance to be divided as follows: $1682.03 upon the saw mill; $900 upon the engine; $551.25 upon the grain, flour and feed in

the grist mill, and $1688 upon the machinery and fixtures in the grist mill. On September 3d, 1881 the mills were entirely destroyed by fire, the engine was badly damaged, and there was a loss of all the grain in the grist mill except a few bags of wheat. By the terms of the policy, proofs of loss were to be furnished as follows:

"3. A particular statement of the loss shall be rendered to the secretary of this company, at its office in Philadelphia, within thirty days after the fire, signed and sworn to by the assured, setting forth," inter alia, "*Fourth.*—The ownership of the property insured, the interest of the assured therein, and all encumbrances thereon." It was further provided, that "6. Any fraud or attempt at fraud, or any misrepresentation in any statement touching the loss, or any false swearing on the part of the assured or his agent, in any examination, or in the proofs of loss or otherwise, shall cause a forfeiture of all claim on this company under this policy; and in such case, this company shall have the right at any time to require the same to be delivered up to be cancelled."

On September 5th, Thierolf went to the office of the defendant company and notified the president and secretary of his loss. He gave them a detailed statement of the loss of personal property as far as he could do so. He testified, at the trial as follows: "I told them all I knowed that time . . . . . They took down what I told them was destroyed out of the mill. The secretary did the writing." The president of the company, on the Saturday following the fire, visited the premises, examined them, and inquired what it would cost to replace the buildings and suggested that he bring up a builder to meet the plaintiff with another builder so that they could arrive at the cost of rebuilding. On the day appointed plaintiff was there with his builder, but Cross, the president of the company, failed to appear. Subsequently, Cross went out to see the premises with a builder, but having failed to notify the plaintiff, the latter was not there to meet him. Plaintiff, failing to hear from the company, wrote to them twice demanding a settlement; on October 3d, he received a copy of the by-laws. A statement of loss was immediately made and forwarded to the office of the company, where it was received thirty-three days after the fire. The proofs, although informal, complied substantially with the requirements of the policy. The statement in answer to the fourth requirement was: "The property belonged to Philip Thierolf in his own right."

The company refused to pay the loss because of plaintiff's failure to send in proofs within thirty days. At the trial it was discovered that a lien had existed on the property at the

[Thierolf v. Ins. Co.]

time of the fire which was not reported as required. This lien had since been paid off. Plaintiff testified, as to this lien, that he borrowed money on the credit of his farm, when he purchased the mill, and gave a judgment therefor, which he thought was a lien only upon his farm.

The court charged the jury, inter alia, as follows:

"While there may be evidence to show that compliance with the condition, requiring that such statement should be made within thirty days of the loss, was waived by the acts, declarations and conduct of the insurance company, yet there is no evidence of sufficient moment to justify or warrant the court in submitting to the jury the question as to whether there was a waiver of the requirements of a particular statement such as the law and the contract contemplate, and of a statement of the amount of incumbrances upon this property; and, therefore, gentlemen, I instruct you that there is no evidence in this case upon which you can render a verdict for the plaintiff, and that it is your duty to render a verdict in favor of the defendant."

Verdict for the defendant and judgment thereon. Plaintiff took this writ of error, assigning for error, inter alia, the portion of the charge above reported.

*Alfred Fackenthall,* (*J. Fackenthall* and *Henry Lear* with him), for plaintiff in error.—The facts and circumstances of this case we submit are equally strong, if not stronger evidence of a waiver of formal proofs, than were the acts of the secretary of the Susquehanna Mutual Insurance Company in the recent case of the said Company *v.* Staats, 6 Out., 529, where the question of waiver was submitted to the jury, and, as this court said, properly. In the case of the Penna. Fire Ins. Co. *v.* Dougherty, 6 Out., 568, Justice GORDON in delivering the opinion of the court, said: "The waiver of the proofs of loss required in a policy, may be inferred by any act of the insurer, evincing a recognition of liability, etc., and prima facie, the insured is entitled to have his loss made good immediately upon its happening, and when that loss appears to be an honest one, we are not disposed to scan very strictly the evidence which tends to rebut a 'technical forfeiture of the right to payment.'"

*George Ross* (*L. L. James* with him), for defendant in error, presented no paper book but referred to the opinion of the court below as containing the substance of their argument.

Mr. Justice PAXSON delivered the opinion of the court, May 25th, 1885.

This was an action of covenant upon a policy of insurance to recover for the loss of the insured property by fire. The insurance was upon a frame saw mill, $1682.03; on engine under saw mill, $900; on grain, flour and feed in grist mill, $551.25, and on fixed and movable machinery in grist mill, $1688.00. The property was destroyed by fire on September 3d, 1881. There was a total loss on the saw mill; the engine was badly damaged, but the loss could not be considered total; there was a total loss on the stock of grain with the exception of two bags of wheat, and the loss appears to have been total on the machinery of the grist mill. There was an additional insurance on the grist mill in the Lahaska Insurance Company, which loss was promptly paid. The defendant company resisted payment upon the ground that the proofs of loss were insufficient and not furnished in proper time. The plaintiff contended that the proofs were sufficient, and that in any event the company had waived formal proofs. The court below instructed the jury that the proofs were inadequate; that there was no proof of a waiver, and instructed the jury to find for the defendant.

The policy required the proofs of loss to be furnished within thirty days. The written proofs were furnished about thirty-three days after the fire. The learned judge conceded there was a waiver as to time, and of such waiver there can be no question under the evidence. It is also equally clear that as to the saw mill no proofs of loss were necessary, as the loss was total, and the officers of the insurance company visited the premises; saw that it was totally destroyed, and desired the plaintiff to procure estimates for re-building. Upon this point the law is too well settled to need the citation of authority. To this extent, at least, the ruling of the court below was error.

As the learned judge did not allow the jury to pass upon the facts, we must take the plaintiff's testimony for verity. While the proofs of loss are certainly informal and not very full, we must write into them what occurred at the office of the company immediately after the fire. The plaintiff there gave them notice of the loss, which is not disputed. He did more however. He gave the company a detailed statement of the loss so far as he could do so. The president and secretary were present. In reply to the inquiry as to what was burned he answered: "I told him wheat, corn, choppings, bran, flour, bags, with several little notions. . . . . I gave them all pretty much as I knowed. I told them all I knowed that time . . . . . They took down what I told them was destroyed out of the mill. The secretary did the writing I think. Mr. Cross (the president) said he would come up and see about

[Thierolf v. Ins. Co.]

it . . . . . I told them everything was destroyed—the saw mill too." Mr. Cross came up on the Saturday following the fire; examined the premises; inquired of the plaintiff what it would cost to replace the saw mill, and being told he did not know, suggested that they should ascertain; that he would come up again and bring a man, and the plaintiff should have a man there. On the day appointed the plaintiff was there with his builder but Mr. Cross did not come. He came upon a subsequent day, and brought a man with him, but he did not notify plaintiff and they did not meet. Mr. Cross himself testified in answer to the question, Was any arrangement made about coming up again?: "I suggested to him if we could not come to any understanding of what the loss was, that perhaps it would be well for us to arrange to have a builder to see what the building was worth, and also a machinist to give us some idea of what the loss on the engine was. He admitted at that time, or rather seemed to think, the engine was not a total loss."

All this, and much more, occurred after the plaintiff had given the company as full a statement of his loss as it was in his power, and the same had been reduced to writing and retained by the secretary. So far as the object of the proofs of loss is to furnish information as to the details, the company had it as fully as it was in the power of the plaintiff to furnish. In addition the president was twice upon the premises and saw the condition in which the property was left, saw the plaintiff, and we have not a word to indicate an intention to refuse to pay. Just here the language of our brother GORDON in Penna. Fire Ins. Co. v. Dougherty, 6 Out., 568 is appropriate: "The waiver of the proofs of loss required in a policy, may be inferred by any act of the insurer, evincing a recognition of liability, etc., and prima facie, the insured is entitled to have his loss made good immediately upon its happening, and when that loss appears to be an honest one, we are not disposed to scan very strictly the evidence which tends to rebut a technical forfeiture of the right to payment."

That this was a perfectly honest loss does not admit of a doubt. The company were dealing with an ignorant man, evidently intensely ignorant of everything relating to insurance; whose risk they had solicited through their agent, and were bound to deal with him in entire good faith. Their manner of dealing with him was calculated to inspire confidence and throw him off his guard. Had they regarded the proofs of loss as insufficient, it was their duty to inform him in what respect they were unsatisfactory.

The proofs of loss here are much fuller and more satisfactory than in Beatty v. Lycoming Ins. Co., 16 P. F. S., 9. In

that case the proofs, were a loss of "household furniture $367; groceries $233," the same as in the policy. This court very properly held the proofs insufficient.

Much stress was laid upon the fact that there was an incumbrance upon the property which was not mentioned in the proofs of loss, and it was claimed that under the sixth section of article 7 of the policy, such an omission worked a forfeiture of the policy. Said section provides that "any fraud or attempt at fraud, or any misrepresentation in any statement touching the loss, or any false swearing on the part of the assured or his agent in any examination, or in the proofs of loss or otherwise, shall cause a forfeiture." It was contended for the plaintiff that the omission referred to was the result of ignorance; that when he bought the mill property he borrowed a portion of the money to pay for it upon the credit of his farm, and gave a judgment therefor, supposing it would be a lien only on the farm. So strong does he seem to have been impressed with this belief that upon the trial below he testified that the judgment was a lien on the farm and not on the mill. For the purposes of this case we must consider it an honest mistake. Does it avoid the policy? If it does I would be ashamed to sit here and say so. The section of the policy referred to evidently contemplates fraud or wilful misrepresentation. There was no warranty against incumbrances; this was a mere slip or omission in making out the proofs of loss. The clause in the policy is not obscure, and it would be an imputation upon the honesty of the company to place any other construction upon it. We are not willing to suppose they intended it as a pit-fall in which to entrap and entangle simple-minded countrymen who had been so unfortunate as to suffer a loss under one of its policies.

A comparison of the proofs of loss with the policy shows that all its requirements have been substantially complied with, excepting in the omission to note the incumbrance. This, as before observed, was an innocent mistake, and as it has not been shown, and doubtless can not be, that the omission has in any manner prejudiced the company, we see no reason why the proofs of loss should not have been submitted to the jury. There are instances in which the proofs of loss in this case would not be sufficient; but the defendant company has specified the items which the proofs of loss must contain under their policy, and the plaintiff is not bound to furnish anything further.

Judgment reversed and a *venire facias de novo* awarded.