## CHARLESTON.

OLIKER v. WILLIAMSBURGH CITY FIRE INSURANCE COMPANY.

Submitted June 14, 1911.    Decided May 6, 1913.

1. EVIDENCE—*Insurance—Warranties Against Chattel Mortgages—Parol Evidence.*

    If the property insured by a policy be personal property, and at the time of the contract no written application is required, and none made, and no information or notice is given the insurer or its agent, and there was no inquiry of or representation by the insured respecting the existence or non-existence of chattel mortgages or deeds of trust on the property, and the insurer at or before the delivery of the policy has had no information concerning the same, and the insured accepts the policy, with the affirmative warranties therein against such incumbrances, which by the terms of the policy will render it void, the contract will be enforced according to its terms, unless such warranties be waived, as provided therein, and oral evidence of prior or contemporaneous oral agreements will not be received to vary or contradict the terms of the policy. (p. 439).

2. INSURANCE—*Warranties Against Chattel Mortgages—Breach—What Constitutes.*

    Though an existing chattel mortgage or deed of trust be void, as to creditors, being good as between the parties, it will constitute a breach of the warranty in such policy against incumbrances, voiding it, unless waived by the insurer as provided in the policy. (p. 443).

Error to Circuit Court, Marion County.

Action by Rebecca B. Oliker against the Williamsburgh City Fire Insurance Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Rendered.*

*Davis & Davis* and *E. B. Templeman,* for plaintiff in error.

*W. S. Meredith, M. M. Neely,* and *R. J. Abbaticchio,* for defendant in error.

Miller, Judge:

In an action on a policy of fire insurance the court below, on demurrer to the evidence by defendant, pronounced judgment for plaintiff, for $2,138.67, the damages found by the jury, with interest and costs.

Among the questions presented are those touching, alleged want of notice of the loss in writing by the assured to the defendant after the fire; alleged waiver thereof by defendant; alleged failure to furnish proper proofs of the loss as required by the terms of the policy; error in admitting and rejecting certain evidence; but the ruling question, and the one mainly relied on, and covered by defendant's specifications of defense, and to which the decision of the case may be properly narrowed is, was there a breach by plaintiff of any of the affirmative or promissory warranties contained in the policy, depriving her of right of recovery thereon? If there was, that will be decisive of the case and no other question is fairly presented.

The policy sued on, dated August 6, 1907, was originally issued to Oliker & Epstein, a firm composed of plaintiff, Mrs. R. B. Oliker, and Andrew J. Epstein, on a stock of merchandise, at Fairmont, West Virginia. On May 20, 1908, this policy, defendant by indorsement thereon consenting thereto, was assigned by said firm to plaintiff. The sale and transfer by Oliker & Epstein to Mrs. Oliker of the stock of goods covered by the policy occurred on January 1, 1908, and on January 15, following, Mrs. Oliker and her husband executed a deed of trust thereon to Martin, trustee, to secure Epstein's wife payment of a note of Mrs. Oliker, for $2,000.00.

The provisions of the policy, the standard form prescribed by sections 68 and 69, chapter 34, Code Suppl. 1909, relied on in

defense, are as follows: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; * * * * or if any change, other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured; * * * *."

The breaches assigned are as follows: "Defendant states that the interest of the insured in the subject of the insurance was other than unconditional and sole ownership; that the subject of insurance was personal property, and that the same was and became incumbered by a deed of trust or chattel mortgage, executed by the said R. B. Oliker, by the name of Rebecca B. Oliker, and David B. Oliker, her husband, to F. T. Martin, Trustee, on the 15th day of January, 1908, to secure unto Ida Epstein, or order, the sum of Two Thousand Dollars. Which said deed of trust was admitted to record in the Office of the Clerk of the County Court of Marion County, West Virginia, on the 20th day of January, 1908, in Trust Deed Book No. 24, page 75. That a change other than by the death of the insured, took place in the interest and title to the subject of insurance, by voluntary act of the insured. By reason of which and according to the provisions of the policy sued upon, said policy was and became void, and of no effect, nothing contrary to the provisions of the said policy having been provided by agreement endorsed thereon, or added thereto." It is proven that the policy sued on was the renewal of a policy issued August 6, 1906, at which time the interest of Andrew J. Epstein in the property was also covered by a deed of trust in favor of his wife, Ida J. Epstein, and which continued unreleased until the execution of the new trust by plaintiff on January 15, 1908.

On the trial some attempt was made to sustain the defense that the insured's interest in the subject of insurance was other than the unconditional and sole ownership. Some evidence tended to show that while the business was nominally in her name, the property in fact belonged to her husband. We think

this defense failed of proof. At all events, on demurrer to the evidence, we cannot say the evidence was sufficient, if good, to sustain the defense.

As to the defense of prior and subsequent incumbrances by deeds of trust, plaintiff pleads: (1) waiver by defendant; (2) that the deed of trust of January 15, 1908, was void *per se,* as against creditors, and constituted no lien or incumbrance on the property insured, wherefore no breach; and (3) that by defendant's consent in writing to the assignment of the policy by Oliker & Epstein to Mrs. Oliker, a new contract of insurance was consummated, the equivalent of a new policy then issued to her, the warranties against incumbrances then existing being thereby converted into affirmative warranties, all waived by failure of defendant to require a written application, or to otherwise inquire concerning the same, all upon the rules and principles enunciated in *Wolpert* v. *Northern Assur. Co.,* 44 W. Va. 734, *Cleavenger* v. *Franklin Fire Ins. Co.,* 47 W. Va. 595, and *Medley* v. *German Alliance Ins. Co.,* 55 W. Va. 342.

Without undertaking to decide the exact question, whether consent in writing by an insurance company to an assignment of one of its policies amounts to a new and independent contract with the assignee, a proposition seemingly well fortified by the authorities cited by counsel, particularly when the assignee is a stranger to the policy assigned, we may, for the purposes of this case, accept the proposition as true, and dispose of the case on that theory, for we have concluded that the broad proposition that, by omitting to take a written application for a policy of insurance, or make inquiry, an insurance company thereby waives breaches of warranties against incumbrances, supposed to be affirmed by the cases cited, is opposed to correct legal principles, as well as to the great weight of authority, and that so far as the same finds support in those cases they ought to be modified or limited so as to conform to the rules and principles governing contracts generally, including insurance contracts.

Having reached this conclusion it is immaterial whether we treat the breach of the warranty against incumbrances, as affirmative, that is against existing incumbrances, or as promissory, against breaches occurring subsequently to the date of the policy, for the same rule is applicable, we think, to both forms of warranty, so far as the question of waiver or estoppel is con-

cerned. That rule, sustained by the weight of authority and reason, is that, in the absence of fraud or actual knowledge on the part of the insurer or its agent, at the time, of the facts constituting the breach, waiver can only be effected in the manner provided in the policy.

The second point of the syllabus of *Wolpert* v. *Northern Assur. Co., supra,* is: "If an insurance company elects to issue its policy of insurance against a loss by fire without any regular application, or without any representation in regard to the title to the property to be insured, it cannot complain, after a loss has occurred, that the interest of the insured was not correctly stated in the policy, or that an existing incumbrance was not disclosed."

The broad proposition affirmed in this point then found support in *Insurance Co.* v. *Rodefer,* 92 Va. 747, 24 S. E. 393, the only authority cited in support thereof, and which has since then been overruled and repudiated as contrary to sound principles, by the Virginia Court, in *Westchester Fire Ins. Co.* v. *Ocean View Co.,* 56 S. E. 584; *Virginia Fire & Marine Ins. Co.* v. *Case Threshing Machine Co.,* 59 S. E. 369. The proposition may also find some support in our case of *Cleavenger* v. *Franklin Fire Ins. Co.,* and it is claimed in *Medley* v. *German Alliance Ins. Co., supra;* but the latter case does not support the proposition. That case involved the knowledge of the agent of the true state of the title of the insured, communicated to him before the policy was issued, and fraud or mistake on his part to insert it in the policy, estopping defendant from setting up a different state of the title as a defense to the action on the policy, in the absence of notice to the insured, prior or contemporaneously, of want of authority in the agent to waive the condition of the policy. Moreover, in the Wolpert Case, also, while no written application was required, it is implied at least, from one or more of the instructions to the jury, that the agent issuing the policy was informed and had actual knowledge of the existing incumbrance, and with such knowledge issued the policy, without indorsing waiver of the breach, an act of bad faith, if not fraud, on his part, bringing the case perhaps within the rule of the Medley Case; and as counsel argue, this presented a question, not of waiver by implication, but of express waiver or estoppel,

wherefore the clear legal question which is presented here may not have been presented in that case.

The Cleavenger Case also involved a question of bad faith on the part of the agent. Although a written application was required, and was addressed to one company, after being signed, it was changed without authority of the assured to another company whose policy was issued. The court held the policy so issued was as if upon no written application, and that the assured was not bound by the affirmative warranties in the application and policy. While fraud was not charged, and seemingly the case was not made to turn on that question, nevertheless it had that element in it, not present in the case at bar. The exact point decided in the Medley Case, and distinguishing it from this case and covered by point 2 of the syllabus, was: "When an insurance agent, entrusted with blank policies and authorized to fill up, countersign and deliver them, *is correctly informed,* by the person whose property he undertakes to insure, *as to the state of the title and other facts material to and affecting the inception of the contract,* so far as inquiry is made respecting them, and takes no written application for the insurance, and then issues a policy embodying, as warranties therein, *facts different from those which were given to him by the insured,* the company is estopped from defending a claim for loss under the policy on the ground of such false recitals, unless it is shown that the insured has prior or contemporaneous notice of want of authority in the agent to waive conditions." We call special attention to the words italicized.

In our case of *Maupin* v. *Insurance Co.,* 53 W. Va. 557, the general rule of evidence, applicable to contracts generally, was in point four of the syllabus applied, by a divided court, with all its force, to insurance contracts, as follows: "It is a fundamental rule in courts of law and equity that oral evidence of a prior or contemporaneous oral agreement or conversation can not be received to vary or contradict a valid written contract, unless in case of fraud or mutual mistake. This rule is applied to policies of fire insurance." This case involved a breach of the warranty contained in the so called "iron safe" clause, a promissory warranty, which it was claimed had been subsequently waived by the oral agreement of defendant's agent, and not evidenced by any indorsement on the policy. Judge Por-

FENBARGER, who wrote the opinion in the Medley Case, dissented for practically the same reasons by which the majority through him reached its conclusion in that case. The rule of the Maupin Case, modifying, if not tacitly overruling the Wolpert and Cleavenger Cases, *pro tanto,* was predicated mainly on *Northern Assurance Co.* v. *Grand View Building Association,* 183 U. S. 308, a decision by a divided court, and which is criticised and distinguished by Judge POFFENBARGER, with reference to the decisions of other states, refusing to follow it, in its entirety, in his opinion in the Medley Case, and in his dissenting opinion in the Maupin Case. It is wholly unnecessary in this opinion to again review and reconsider the many conflicting decisions of the courts on this important subject. It suffices to say that the law of this state now is that affirmed in the Maupin Case, limited or modified by the decision in the Medley Case, the words italicized in the point of the syllabus of the latter case, above quoted, showing the limitation or modification intended and distinguishing the one from the other.

As applicable to the case at bar, and where the property insured is personal property, that rule, briefly stated, is that if at the time of the contract for insurance, no written application is required, and none taken, and no information or notice is given the insurer or its agent, and there was no inquiry of or representation made by the insured, respecting the existence or non existence of chattel mortgages or deeds of trust on the property, and the insurer at or before the delivery of the policy has had no knowledge or information concerning the same, and the insured accepts the policy, with the affirmative warranties therein against such incumbrances, which by the terms of the policy will render it void, the contract will be enforced according to its terms, unless the warranties be waived, as provided therein, and oral evidence of prior or contemporaneous oral agreements will not be received to vary or contradict the terms of the policy.

Assuming, on the trial, that defendant's consent to the assignment of the policy to plaintiff constituted a new and independent contract freed of all vices or infirmities of the old and unaffected by any prior breaches by the assignors, plaintiff undertook to bring her case within the rule of the Medley Case. She undertook to show by the testimony of her husband, D. B. Oliker, who transacted the business for her, that at the time the agent

indorsed on the policy the consent of the company to the assignment thereof to her, he had informed him of the existence of the deed of trust of January 15, 1908, in favor of Mrs. Epstein. But if the rule of the Medley Case be applicable to assignments of insurance policies, we think the evidence wholly fails to show such notice, or information to the agent. The agent flatly denies it, and on cross-examination, Oliker was asked: "Q. Are you willing to swear that you mentioned deeds of trust to Mr. Holbert at that time? A. I don't know; not positively sure." Two witnesses, Holbert and Horkheimer, one the agent, the other an insurance adjuster, swear that when interrogating Oliker after the fire, as to why he had not notified the company or its agent of the deed of trust, answered, that it was because he did not want to protect Epstein, that if Epstein wanted protection, he wanted him to take out insurance for himself. On this and other evidence in the case a verdict for plaintiff, dependent thereon, could not have been allowed to stand.

The second reply of plaintiff to defendant's specifications of defense, remains to be disposed of, namely, that the deed of trust was void on its face as to creditors, wherefore no breach of the warranty of title, or against incumbrances. A sufficient answer to this proposition is that the deed of trust, though it may have been void as to creditors, was good between the parties, wherefore there was a breach, denying recovery.

For these reasons we are of opinion to reverse the judgment, and, on the demurrer to the evidence, to enter judgment here for defendant.

*Reversed and Rendered.*