# Wytheville

## ALEXANDER H. SANDS, JR., ADMINISTRATOR, ETC. v. BANKERS' FIRE INSURANCE COMPANY.

June 10, 1937.

Present, All the Justices.

UPON PETITION FOR REHEARING.
Staunton, September 23, 1937.

The opinion states the case.

*Alexander H. Sands* and *Alexander H. Sands, Jr.*, for the plaintiff in error.

*Christian, Barton & Parker* and *Theodore J. Breitwieser*, for the defendant in error.

Eggleston, J., delivered the opinion of the court.

This is an action to recover on a fire insurance policy issued by the Bankers' Fire Insurance Company, a North Carolina corporation, hereinafter called the Insurance Company, on a cotton gin owned by J. M. Livingston, the assured, and located near Tupelo, Mississippi. The policy carried indorsements making the loss thereunder payable to J. S. Livingston and C. E. Smith, as first and second mortgagees, as their respective interests might appear.

The gin having been destroyed by fire on May 12, 1934, suit was instituted in the court below by J. M. Livingston, J. S. Livingston and C. E. Smith, as joint plaintiffs. Both J. M. Livingston and J. S. Livingston died during the pendency of the proceedings below and the suit was revived as to them in the name of Alexander H. Sands, Jr., who qualified as ancillary administrator of each.

The defense in the court below as shown by the special pleas and grounds of defense was:

(1) That there had been a breach of the warranty in the policy that the assured was the "sole and undisputed owner, absolutely in fee simple, of the land" on which the insured buildings stood; and that, contrary to the terms of the policy, the interest of the assured in the property was "other than unconditional and sole ownership;"

(2) That at the time the policy was secured the assured had, in violation of its terms, concealed from the company the material fact that there was duly docketed against him a judgment in the sum of $12,616.76, which was a lien on said property;

(3) That at the time the policy was secured, and contrary to its terms, the property described therein was encumbered by a chattel mortgage in favor of J. S. Livingston, and another in favor of C. E. Smith;

(4) That subsequent to the fire the assured, J. M. Livingston, had made certain false sworn statements in the proof of loss.

The case was heard in the court below by the learned judge without the intervention of a jury, partly on depositions and partly on testimony taken *ore tenus* before him. Without delivering any written opinion or assigning any specific reasons for its conclusions the trial court entered a final judgment for the defendant, to review which this writ has been awarded.

The essential facts are not disputed. In 1928 J. M. Livingston erected the gin, at a cost of about $12,000, on a small tract of land, the title to which stood in the name of W. T. Livingston, his father. W. T. Livingston testified that he had orally given the land to the assured, had written a will confirming this gift, and had consented to the erection of the improvements.

In January, 1929, J. M. Livingston executed and delivered to his uncle, J. S. Livingston, a mortgage on the gin to secure a debt of $8,000. There is no question as to the good faith of this transaction.

Early in January, 1934, J. M. Livingston procured, through J. M. Savery, Inc., an insurance agency doing business in Tupelo, of which J. M. Savery was the president, insurance on the property in the total amount of $8,450, divided between four companies as follows: Liverpool & London & Globe Insurance Company, $2,500; Rhode Island Insurance Company, $2,500; Lloyds of London, $1,000; and Bankers' Fire Insurance Company, $2,450. About the middle of March of the same year the Liverpool & London & Globe Insurance

Company and the Rhode Island Insurance Company canceled their two policies and J. M. Savery, Inc., replaced these by another in Lloyds of London for the sum of $5,000.

There is some dispute as to whether the policy written by the Bankers' Fire Insurance Company, and involved in this suit, was issued in January or subsequent to the cancellation of the two policies in March. We think the evidence sustains the contention of the Insurance Company that this policy was written and became effective on the date thereof, to-wit, January 24, 1934. At any rate, when the fire occurred on May 12, 1934, the property was covered by three policies as follows: Bankers' Fire Insurance Company, $2,450; Lloyds of London, $5,000; and Lloyds of London, $1,000.

On behalf of the Bankers' Fire Insurance Company an adjuster investigated the fire and agreed that that company's proportion of the loss, assuming it to be liable on the policy, was $2,209.08.

The defendant company, however, declined to pay the loss and this suit was brought in Virginia, wherein it had a statutory agent on whom process could be served. There was none in Mississippi as the company was not licensed to do business in that State.

Although the Insurance Company had no agent in Mississippi authorized to sign policies on its behalf, it insured property therein through Arthur F. Houts & Company, insurance brokers of New York. The manner in which this policy was placed is typical of the method by which the Insurance Company did business in Mississippi.

In making up the desired amount of insurance on this property Savery, Inc., sought the assistance of these brokers. The latter arranged with the defendant Insurance Company for the issuance of the policy here involved. It seems to have been made out on one of the forms signed in blank at the home office of the company, delivered to an agent at Seagirt, New Jersey, filled out by him, transmitted to Houts & Company, and by the latter to Savery, Inc., which, in turn, delivered it to the assured. The premium was duly paid.

Although one of the principal defenses is that the assured

made statements to the Insurance Company which were material and false, on the basis of which the policy was issued, and concealed from it other material matters which should have been disclosed, the record fails to show just what information was in fact furnished. No written application was required of the assured as a prerequisite to the issuance of the policy. Savery says he wrote a letter to Houts & Company giving the necessary data on which the policy was written. Certainly this information must have been passed on to the Insurance Company before the policy was issued, and yet it was not produced.

▐▌ Where an insurance company defends liability on the ground that the policy was issued on the basis of material misstatements or misinformation, the burden is on the company to prove such misstatements or misinformation. The defense is an affirmative one. *Palmetto Fire Ins. Co.* v. *Fansler,* 143 Va. 884, 891, 129 S. E. 727; *Aetna Ins. Co.* v. *Aston,* 123 Va. 327, 336, 96 S. E. 772; *Virginia F. & M. Ins. Co.* v. *Hogue,* 105 Va. 355, 360, 361, 54 S. E. 8; 3 Cooley's Briefs on Insurance (2d Ed.), pp. 1929, 1930.

Instead of producing the original letter from Savery, Inc., to Houts & Company, containing the information on the basis of which the policy was issued, the Insurance Company sought to supply this missing data in the following manner: It proved that at the time the assured made application to Savery, Inc., for the full amount of the insurance desired on the property, $8,450, he signed and filed with the Liverpool & London & Globe Insurance Company and the Rhode Island Insurance Company written applications for policies (which were subsequently canceled as aforesaid) containing some of the alleged information (or misinformation) here relied on. It is argued that it should be inferred from Savery's testimony that Savery, Inc., passed on to Houts & Company this and only this information.

Assuming, but not deciding, that this was sufficient proof of what information was furnished, let us examine it and the effect thereof on the policy here involved.

1. *The title to and ownership of the property.* There is

no statement in the written applications, either to the Liverpool & London & Globe Insurance Company or to the Rhode Island Insurance Company, that the fee simple title to the land on which the gin was located stood in the name of the assured, or that he was the sole and unconditional owner thereof. Nor is there any testimony that Savery or the assured made any such statement to the defendant company.

On the contrary both Savery and the assured testified that the latter disclosed to Savery the exact status of the title to and the ownership of the property—that it stood in the name of the father of the assured, who had made an oral gift thereof to the assured and had written his will devising the property to him. Savery said that he thought this was a sufficient compliance with the fee simple title warranty and unconditional and sole ownership statement in the policy. But whether Savery be right or wrong in his interpretation of the policy, he certainly had knowledge of the status of the title to and the ownership of the property.

2. *The judgment lien.* While the assured did not tell Savery of the judgment of $12,616.76 in favor of the local bank against him, Savery testified that he knew of it, that it was a matter of common knowledge among the business people of the community.

Savery further testified that he did not think that this was an "encumbrance" or "lien" to be reported to the Insurance Company in applying for the policy.

Whether a judgment lien is an encumbrance within the meaning of a fire insurance policy is a matter as to which the courts are in conflict. See 14 R. C. L., sec. 239, pp. 1062, 1063; 4 Couch, Cyclopedia of Insurance Law, sec. 905, p. 3138; 8 L. R. A. 73, note, and cases there cited.

The rule in Mississippi is that a judgment lien is not an encumbrance which must be listed under the terms of the policy. *Georgia Home Ins. Co.* v. *Schield,* 73 Miss. 128, 19 So. 94.

But, in any event, Savery had full knowledge of this judgment.

3. *The chattel mortgages.* In this connection the Insurance

Company contends that since the assured was not the owner in fee simple of the land on which the gin was located, the deeds of trust or mortgages thereon to J. S. Livingston and C. E. Smith conveyed only the building and the gin as personal property, and hence amounted to chattel mortgages and should have been stated as such in applying for this policy.

It is a sufficient answer to this contention to say that whatever may be the nature of the mortgages—whether mortgages on an equitable interest in real property, or chattel mortgages on personal property—the policy itself carried actual knowledge of their existence in the mortgage clause thereto attached, in which it was stated that the loss under the policy was payable to the mortgagees or trustees, as their interests might appear. How can it be said that the Insurance Company was misled by something stated on the face of the policy?

Thus we see that the evidence is undisputed that Savery had, at the time the policy was solicited, issued and delivered, full knowledge of each and every matter which the Insurance Company now claims was misstated to, or concealed from it, and by which it alleges that it was misled.

This being so, if Savery was the agent of the Insurance Company, then such knowledge as he had was imputed to it and, in the absence of fraud on the part of the assured, the Insurance Company is estopped to rely upon such misstatements or lack of information. *North River Ins. Co.* v. *Lewis,* 137 Va. 322, 327, 119 S. E. 43; *North River Ins. Co.* v. *Belcher,* 155 Va. 588, 603, 155 S. E. 699; *Massachusetts Bonding & Ins. Co.* v. *Piedmont Service Station, Inc.,* 165 Va. 167, 175, 181 S. E. 397; *Mutual Benefit, etc., Ass'n* v. *Alley,* 167 Va. 144, 187 S. E. 456, 459; *Hartford Fire Ins. Co.* v. *Clark,* 154 Miss. 418, 122 So. 551, 553, 554; *Bergeron* v. *Pamlico Insurance & Banking Co.,* 111 N. C. 45, 47, 15 S. E. 883; 14 R. C. L., sec. 347, pp. 1167-1169; 5 Cooley's Briefs on Insurance (2d Ed.), p. 4040.

But the Insurance Company claims that in procuring this policy Savery was not its agent; that he had no authority to

sign its policies; and that, in fact, in procuring this particular policy Savery was the agent of the assured.

A complete answer to this contention is section 5196 of the Mississippi Code of 1930, which provides:

"Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; * * *."

Statutes of this character are found in a majority of the States. 2 Couch, Cyclopedia of Insurance, sec. 492, p. 1401. They have been held to be constitutional. *Continental Life Ins. Co.* v. *Chamberlain*, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341; *American Fire Ins. Co.* v. *King Lumber, etc., Co.*, 250 U. S. 2, 39 S. Ct. 431, 63 L. Ed. 810.

Under this statute Savery was the agent of the Insurance Company. What knowledge he had was imputed to it. *Interstate Life, etc., Co.* v. *Ruble*, 160 Miss. 206, 133 So. 223, 224; *St. Paul F. & M. Ins. Co.* v. *Loving*, 163 Miss. 114, 140 So. 727.

The Insurance Company next contends that even though Savery was its agent by virtue of the above statute, yet the knowledge which Savery had was not imputed to it, the Insurance Company, because Savery and the assured fraudulently colluded and conspired to the end that the said Savery

would and did conceal from the Insurance Company the true status of the title to and the ownership of the land on which the property was located, the existence of the aforesaid judgment, and other material matters, all of which had they been known to the Insurance Company the policy would not have been written and issued.

Of course, it is well settled that "No agent has power to perpetrate a fraud upon his principal. If the applicant knows that there are misrepresentations in the answer as written and that they are material, there is fraud in the inducement when a policy is issued upon their faith. He can not depend upon the power of the agent, in the language of the street, to put it over." *Mutual Benefit, etc., Ass'n* v. *Ratcliffe,* 163 Va. 325, 335, 175 S. E. 870, 874; *Mutual Benefit, etc., Ass'n* v. *Alley,* 167 Va. 144, 187 S. E. 456, 459; *Provident Relief Ass'n* v. *Butts,* 158 Va. 259, 263, 163 S. E. 66, 67; *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613, 623, 36 S. Ct. 676, 680, 60 L. Ed. 1202.

It is equally well settled that where the assured makes a full and fair disclosure of all material facts to the agent, and the latter, either through ignorance, negligence, or fraud, fails to correctly impart this knowledge to the insurance company, and the assured is in no way at fault for the act of the agent in failing to correctly transmit the information, then the insurance company is estopped from claiming a forfeiture of the policy. *Mutual Benefit, etc., Ass'n* v. *Alley,* 167 Va. 144, 187 S. E. 456, 459; *Harrison* v. *Provident Relief Ass'n,* 141 Va. 659, 668, 670, 126 S. E. 696, 40 A. L. R. 616.

Although the charge of fraudulent collusion between the agent and the assured is the main defense relied on before us, neither the pleadings, nor the grounds of defense, nor the questions propounded to any of the witnesses gave the slightest intimation of any such contention in the trial court. It is only fair to say that had such a defense been put in issue below an opportunity would have been given to the assured, who has died since giving his testimony by deposition, and to Savery, to explain the circumstances on which the Insurance Company here lays so much emphasis.

This court has many times said that fraud when relied

upon must be expressly and clearly charged; that it can not be the subject of the trial unless it has been brought in issue by the pleadings. *Potts* v. *Mathieson Alkali Works*, 165 Va. 196, 220, 181 S. E. 521; Virginia and West Virginia Digest (Michie), vol. 5, pp. 34, 35, citing numerous cases. "The charge must be direct as the proof must be clear." *Jordan* v. *Liggan*, 95 Va. 616, 621, 29 S. E. 330, 332.

In *Chesapeake & O. Ry. Co.* v. *Osborne*, 154 Va. 477, 507, 153 S. E. 865, we held that in an action at law where the grounds of defense are filed or called for, as here, fraud, if relied on, must be clearly alleged.

But even assuming that such an issue, not raised in the trial court, is properly before us for review, we have no hesitancy in saying that an examination of the record shows no proof of such fraudulent collusion.

"One who alleges fraud must prove the allegation by clear and convincing proof. The charge can not be sustained by doubtful and uncertain testimony." *White* v. *Bott*, 158 Va. 442, 458, 158 S. E. 880, 163 S. E. 397, 398; *English* v. *Elks' National Home*, 161 Va. 145, 151, 170 S. E. 607.

There is not the slightest evidence that the assured requested or suggested or had any idea that Savery would do otherwise than transmit to the Insurance Company the precise information which the assured gave him, or which Savery knew of his own knowledge. The failure to transmit such information was due entirely to the fault of Savery, and the assured was in no way responsible therefor.

In this respect the case is quite similar to *Harrison* v. *Provident Relief Ass'n, supra*, where we had occasion to examine a similar charge of fraudulent collusion between the assured and the agent and found no evidence of such conspiracy.

The Insurance Company lays great stress on the conceded fact that there was no consideration to support the second mortgage to C. E. Smith; that this was a fraudulent conveyance prepared and recorded for the purpose of putting the equity of the assured in the property beyond the reach of his wife, who had a pending claim for alimony against him.

 It is contended that listing this mortgage as a lien on the property invalidated the policy. But in 4 Couch, Cyclopedia of Insurance Law, sec. 903, p. 3134, it is stated that a fraudulent conveyance, being good between the parties, is an encumbrance which should be listed. See also, *Oliker* v. *Williamsburgh City Fire Ins. Co.*, 72 W. Va. 436, 443, 78 S. E. 746, 749, Ann. Cas. 1915D, 914, 917; *Secrest* v. *Hartford Fire Ins. Co.*, 68 S. C. 378, 47 S. E. 680, 681.

 Nor do we think it necessarily follows, as argued by the Insurance Company, that because the transfer by the assured of his property is fraudulent as to his wife, the procurement of the present policy was likewise fraudulent as to the Insurance Company. The two transactions are by no means interdependent. In fact, the only connection between them is that the endorsement on the policy to C. E. Smith as trustee merely conforms to the transfer of the title to him. The assured was thereby attempting to put the proceeds of the policy, as he had tried to do with the property itself, beyond the reach of his creditor wife. The Insurance Company was in no way deceived or prejudiced by this. If it was willing to insure the property with a valid mortgage thereon to C. E. Smith, trustee, it assumed no greater hazard by insuring the property without this lien thereon.

 But, aside from this, the evidence shows that the assured revealed the true situation to Savery, and it was the fault of the latter if the Insurance Company was misled.

This brings us to the last contention of the Insurance Company, namely, that subsequent to the fire the assured, J. M. Livingston, made a false affidavit in the proof of loss concerning the ownership of the property, the aforesaid judgment, and other matters.

The policy provided: "This entire policy shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss."

In listing the liens and encumbrances on the property the proof of loss made no mention of the docketed judgment for $12,616.76 against the assured in favor of the local bank.

In the proof of loss it was stated that "The property described in said policy belonged, at the time of the fire hereinafter mentioned, to Assured and J. S. Livingston and C. E. Smith, as their interest may appear, and no other person or persons had any *interest* therein." (Italics ours.)

The Insurance Company contends that the failure of the assured to mention the aforesaid judgment in the proof of loss amounted to a false swearing. It claims that the judgment was an "encumbrance" which should have been listed, and that the lien of the judgment creditor was an "interest" in the property, which likewise should have been mentioned.

In the first place, it is by no means certain that the judgment should have been listed as an "encumbrance" in the proof of loss. See *Georgia Home Ins. Co.* v. *Schield*, 73 Miss. 128, 19 So. 94; 14 R. C. L., sec. 239, pp. 1062, 1063; 4 Couch, Cyclopedia of Insurance Law, sec. 905, p. 3138.

Furthermore, it seems well settled that the "interest" referred to in the proof of loss in connection with ownership of the property refers to an "insurable interest," and does not include a judgment creditor. 14 R. C. L., sec. 88, p. 912. Hence it is said that the rendition of a judgment against a property owner does not constitute "a change of interest" within the meaning of the policy. 14 R. C. L., sec. 292, pp. 1116, 1117.

In the next place, "To constitute fraud or false swearing there must be a false statement wilfully made, with respect to a material matter, with the intention of thereby deceiving the insurer, and statements honestly made, although subsequently found to be incorrect, do not avoid the policy." 14 R. C. L., sec. 515, p. 1343; 7 Cooley's Briefs on Insurance (2d Ed.), p. 5838; *Virginia F. & M. Ins. Co.* v. *Hogue*, 105 Va. 355, 366, 54 S. E. 8; *North British & Mercantile Ins. Co.* v. *Nidiffer*, 112 Va. 591, 595, 72 S. E. 130, Ann. Cas. 1916A, 464, 466.

Accordingly, it has been held that an innocent failure to mention a claim under a mistaken belief that it is not a lien against the property will not avoid the policy. 7 Cooley's Briefs on Insurance (2d Ed.), p. 5856. The same is true of

an innocent mistake as to the title to the property. 14 R. C. L., sec. 515, p. 1344.

In *Thierolf* v. *Universal Fire Ins. Co.*, 110 Pa. 37, 20 A. 412, it was held that the innocent failure to list a judgment as an "encumbrance" on the property did not forfeit the policy.

In the present case there is not the slightest evidence that the failure of the assured to list the judgment was prompted by any desire or intention to deceive the Insurance Company. The proof of loss was made up under the supervision of Savery, and he testified that he did not think it necessary to list the judgment. Certainly there is ample authority, including that of the highest court of his State (*Georgia Home Ins. Co.* v. *Schield, supra*), to support his contention.

▆ So, even if it be conceded that the judgment should have been listed, the failure to do so was an innocent mistake and does not avoid the policy.

On the whole our conclusion is that the trial court erred in entering a judgment for the defendant and the same must be reversed.

It appears from the record that the amount due under the policy is $2,209.08, with interest thereon from July 12, 1934, at the rate of 6% per annum until paid; that this should be paid to Alexander H. Sands, Jr., administrator of the estates of J. M. Livingston (the assured) and J. S. Livingston (the first mortgagee), deceased, as their respective interests may appear; and that C. E. Smith, the second mortgagee, has no interest therein. Therefore, by virtue of the provisions of Code, section 6365, a judgment will be entered in this court in favor of the administrator of the said decedents against the said defendant in the said amount, with interest thereon as aforesaid and with costs. It is so ordered.

*Reversed and final judgment.*

*Upon Petition for Rehearing.*
Staunton, September 23, 1937.

PER CURIAM:

In the petition for rehearing it is earnestly contended that

the former opinion filed on June 10, 1937, is in error in stating that the record fails to show what information was furnished to the Insurance Company by the assured on the basis of which the policy was issued. The petition points out that Savery testified that in his letter to Houts & Company he enclosed "the necessary forms to be used on the policy," and insists that these "forms" were completely filled out when they left Savery's hands, were subsequently attached to the policy, and contained all the information and representations relied on.

Whether the "forms" as actually written by Savery were attached to the policy does not clearly appear from the record. Savery did not so testify. Harris, the assistant secretary of the company, on direct examination indicated that they were. But on cross-examination he plainly showed that he had no actual knowledge of this; that the policy had been signed in blank by him and previously deposited with a New Jersey agent; that he (Harris) had not seen the completed policy.

But even assuming that the "forms" on the completed policy were the same as prepared by Savery, this would not change the conclusion arrived at by us. Both Savery and the assured testified that Savery had, at the time the "forms" were filled out by him, full and correct information concerning each and every matter which the Insurance Company claims was misrepresented to it in the "forms." Therefore, for the reasons stated in our former opinion, the Insurance Company is estopped to rely upon such misstatements of which Savery, its agent, was fully cognizant.

Upon careful consideration of all of the questions presented by the petition the rehearing is denied.