The Mechanics & Traders Insurance Co. *v.* Himmelstein et al., d. b. a. Carnegie Motor Service.

*Insurance—Fire—Notice and proof of loss or damage—Soliciting agent's acts ratified by execution and delivery of policy—Section 9586, General Code—Waiver by agent of written notice and proof of loss—Notice prevented because policy in insurer's possession—Evidence—"Inferences" defined—Requirements waived by insurer retaining policy—Insurer charged with knowledge of return of premium by solicitor—Notice waived by examination of loss by solicitor and adjuster—Evidence to sustain knowledge and ratification of agent's acts—Notice immaterial where liability denied and policy canceled—Insurer's status determined by date of cancellation.*

1. Under Section 9586, General Code, solicitor of insurance, procuring application on which policy is later issued by insurer, is agent of insurance company, which is presumed to know and ratify acts and conduct of solicitor by execution and delivery of policy.

2. Insurance agent, having power to deal in reference to notice of loss, may waive provision as to notice, if there has been substantial compliance by insured with terms of policy, or if there has been total denial of liability by insurer.

3. In action on fire policy, defended on ground that written notice of loss was not given within time specified, facts showing insured delivered policy two days after loss to insurance solicitor, and insurance company itself through counsel redelivered policy on demand in action thereon, warranted inference that company was in possession of policy, and knew of its surrender by insured, and that insured was deprived of opportunity to give notice of loss, as required.

4. "Inferences" are logical deductions from facts and circumstances in record, and are substantial elements in construction of evidence.

5. Retention of insurer of fire policy during period of time in which notice under terms of policy was to be given pre-

cluded insured from giving required notice, and was waiver of condition in policy requiring written notice within certain time.

6. As respects denial of liability, insurer shown to have possession of fire policy after loss *held* to have knowledge of return of premium by solicitor after loss; it being unreasonable to infer that solicitor paid premium out of own money.

7. In action on fire policy, defended on ground that written notice of loss was not given as required, examination of loss by insurer's adjuster and solicitor showed knowledge by insurer of conduct, waiving written notice of loss.

8. In action on fire policy, defended on ground that written notice of loss was not given as required, evidence *held* to show that insurer had knowledge of acts and conduct of solicitor subsequent to loss waiving requirement of notice, and that agency of solicitor continued with unrevoked authority throughout negotiations subsequent to loss, and were ratified by insurer.

9. Solicitor, obtaining application on which fire policy was issued by insurer, and to whom policy was delivered after loss, *held* to have authority to dispense with specific terms of policy as to notice, though policy prohibited waiver by officers or agents of insurer, unless indorsed on policy.

10. In action on fire policy, defended on ground that written notice of loss was not given as required, conformity with terms of policy respecting notice of loss by insured was immaterial, where insurer denied liability before loss, and attempted to cancel policy.

11. In action on fire policy, defended on ground that written notice of loss was not given as required, date of cancellation on policy established status of insurer with respect thereto, and was evidence of insurer's denial of liability prior to loss, making insured's conformity to terms of policy respecting loss immaterial.

(Decided November 15, 1926.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. White, Cannon & Spieth,* for plaintiff in error.

*Messrs. Gordon & Gordon,* for defendants in error.

SULLIVAN, J.   This cause is a proceeding in error to the court of common pleas of Cuyahoga county from a judgment in favor of Bert Himmelstein and Albert Himmelstein, d. b. a. Carnegie Motor Service, plaintiffs below, against the Mechanics' & Traders' Insurance Company, defendant below, in the sum of $1,700, on a policy of fire insurance covering certain automobiles partially destroyed by lightning at Lorain in the disaster of June 28, 1924, and it is sought to reverse the judgment on the ground that it is clearly and manifestly against the weight of the evidence, and contrary to law.

The main contention is that there is a failure of legal proof authorizing a change in the terms of the policy with respect to the question of waiver, in reference to the following clauses incorporated in the terms of the policy:

"In the event of loss or damage, the insured shall give forthwith notice thereof in writing to this company; and within sixty days after such loss * * * shall render a statement to this company signed and sworn to by the insured, stating the time, place, cause of the loss or damage, * * * the sound value thereof, and the amount of loss or damage thereon * * *."

"Upon acceptance of this policy, the insured agrees that its terms embody all the agreements then existing between himself and the company or any of its agents relating to the insurance described herein, and no officer, agent, or other repre-

sentative of this company shall have power to waive any of the terms of this policy, unless such waiver be written upon or attached hereto.''

"The loss shall in no event become payable until sixty days after the notice  *  *  *  and verified proofs of loss herein required have been received by this company.''

It appears from the record that one Schempp, manager of the service company, solicited and procured the insurance from the plaintiffs for the defendant company, and, upon the payment of the premium, the insurance policy issued by the company was delivered to plaintiffs January 24, 1924. The casualty occurring on June 28, 1924, the plaintiffs, after having removed the wrecked car from the city of Lorain to the city of Cleveland, Ohio, notified Schempp orally of the loss, and then and thereupon, at the request of Schempp, the policy was delivered to him by the plaintiffs after a conversation regarding the loss by fire, in which the plaintiffs were told by Schempp that he would see that they were taken care of, and that he would take the policy along to get a settlement, and advised the plaintiffs that in the meantime they may forget about the matter. Subsequently Schempp stated to plaintiffs that he had notified the company, and that it had agreed to send out an adjuster, and advised that the car be kept in the same condition until examined by the adjuster.

Some days later, one Lewis came with Schempp to the business place of plaintiffs, and was introduced as the adjuster of the company, and thereupon an examination was made of the damaged automobile, and the record shows that the alleged

adjuster stated that there would be no doubt about the company taking care of it and a settlement being concluded.

The record further shows that Schempp, immediately after this visit of Lewis, had numerous conversations with plaintiffs concerning the loss, and stated that plaintiffs would get a check for the amount thereof. Later, in another conversation, the failure of the arrival of the check was discussed, and Schempp stated that he had handed in his report to the company, and, as far as he knew, the case was being properly considered.

On September 16, 1924, the plaintiffs received a check in the sum of $100, inclosed in a letter to them from Schempp, stating that the check was the return of the premium as of the date of payment thereof. Later in the office of Schempp the check was discussed, and Schempp stated that the cancellation of the policy was by orders from the home office, and that he had done all he could, and had sent the policy to the home office. Later, counsel for plaintiffs returned the check, and brought the pending case, and immediately thereupon notice was served upon counsel for the insurance company to produce the policy of insurance, and, subsequently, in obedience to this notice, the policy was produced at the trial of the case, and became a part of the record.

It is conceded that no written proof of loss under the terms of the policy was furnished the company, and it is claimed by the pleadings and in the record on behalf of the plaintiffs that the company, through its duly authorized agent, waived the provisions of the policy in relation thereto.

At the conclusion of plaintiffs' case, defendant made a motion to direct a verdict, and, the court overruling the same, the defendant offered no evidence, and under the instructions of the court a verdict for the full amount of plaintiffs' claim, under the terms of the policy, was returned by the jury. Upon the hearing of a motion for a new trial the same was overruled, and thus arose these proceedings in error.

The contention of the plaintiffs is that Schempp, who procured and solicited the insurance, was an agent with full authority to bind the company in its waiver of the written notice of loss as prescribed in the terms of the policy. The defendant insists that, with the procurement and issuance of the policy, the authority of Schempp, as solicitor and agent of the company, ended, and urges that this interpretation of limited power is derived from the statute itself, and from the construction and interpretation of it as laid down in the authorities.

The statute in question is Section 9586, General Code, which provides as follows: "A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party, company or association, thereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding."

From a careful reading of this statute, it is clear that the theory of the lawmaking body is that a solicitor should be held to be the agent, if he procures an application upon which a policy is later issued by the company. The issuance of

the policy is a ratification of the act of the solicitor, and conclusive of the inference derivable from the solicitation and procurement of the application for the policy. In other words, the execution and delivery of the policy to the applicant imports knowledge on the part of the company as to the acts and conduct of the person soliciting and procuring the application. This presumption of knowledge is so thoroughly imbedded in the result of an analysis of the statute that the Legislature establishes the agency so irrevocably that nothing in the terms of the application or policy invalidates the agency.

We find illumination of this statute in *Royal Insurance Co.* v. *Silberman,* 24 C. C., (N. S.), 511, syllabus 1, which reads:

"Section 3644, Revised Statutes [Section 9586, General Code], making the agent who solicits insurance the agent of the company, does not make him the agent of the company for all purposes, but only those connected with the negotiation of the contract, and notice of loss given to such agent will not constitute notice to the company."

On page 517 of the opinion the court refers to a Minnesota case, and further says: "If it is to be held that proofs of loss may be made to any agent, he may waive proofs of loss, and, legally followed out, he might waive the requirements of notice; he may waive the proofs of loss, and he may waive every other matter and adjust for the company, because it can be said that he is the agent of the company; therefore, whatever he does binds the company; but this court say in the opinion no one has ever claimed it went so far as that. That is,

that there must be some limit to his agency. We reach the conclusion that the statute does not make the soliciting agent, or the agent who solicits the application, the agent of the company, authorized to receive notice of loss.''

There are many authorities that support the above holding, but upon this question we refer finally to *Myers* v. *John Hancock Mutual Life Ins. Co.,* 108 Ohio St, 175, 140 N. E., 504, syllabus 1, which holds that notice to an agent will not bind the principal, unless it appears that he had authority to deal in reference to the subject-matter of the notice, or unless he had a duty to communicate the same to his principal. We quote the first paragraph of the syllabus as follows:

''Knowledge of or notice to an agent is not binding upon his principal unless it appear that such agent had authority to deal in reference to those matters which the knowledge or notice affected, or had a duty to communicate the same to his principal.''

These authorities are cited by able counsel for the insurance company in order to show that the statute making a solicitor the agent for the purpose of the issuance of the policy is not broad enough to perpetuate the agency thus created to any contingency beyond the delivery of the policy which relates to any authority to waive the express terms of the policy, unless it be in the manner provided by its own provisions. That an agent with power may waive provisions of this character is well settled, on the theory that courts will not require an unnecessary act, if there has been a substantial compliance with the terms of the

policy, or if there has been a total denial of liability on the part of the insurance company.

From an examination of the pleadings, the transcript, and the record in the case at bar, we are not warranted in passing upon the question in determining the extent of the agency conferred. by the statute upon one who solicits and procures an application upon which there is a policy issued and delivered. We are bound, in our determination of the case at bar, by the record, and the judgment of the court must be in response thereto. Keeping this principle in mind, it becomes our duty to examine the record to ascertain whether there are any acts on the part of Schempp, conceded to be the agent at the time of the delivery of the policy, of which the company had knowledge, which would bind it and make the acts of Schempp authoritative with respect to dispensing with written notice of loss, under the terms of the policy. In other words, are there any facts pregnant in the record to show a ratification on the part of the company of the conduct of the solicitor with respect to waiving the terms of the policy? There may not be any positive evidence of any authorization in the first instance of the act, and yet there may be in the record a ratification of the same to such an extent that the inferences deducible from the entire record would be conclusive of knowledge, authorization, and ratification of the acts in question.

The obvious reasoning of the Legislature, in the passage of Section 9586 of the Code, above referred to, is applicable to the record as well as to the statute. We find that two days after the

casualty the solicitor takes possession of the policy from the plaintiffs and retains it, and the plaintiffs are without the possession of the policy by reason of this act for about three months subsequent to the date of the loss. We find in the record credible evidence that the company itself, through its counsel, in open court during the trial, upon demand under the statute, redelivered the policy to plaintiffs, through their counsel, and in this way the policy became an exhibit in the case.

Now what is the inference fairly and reasonably deducible from this fact? What is the logical conclusion? Reasonably considered, can it be any other than that, in the interim, the policy was in the possession and under the control of the insurance company? Then it follows that the insurance company had knowledge, not only of its surrender by the plaintiffs to Schempp, but, by its retention of it, of the deprivation of the plaintiffs of opportunity to conform to the specific terms of the policy with respect to notice to the company in writing of the casualty.

Inferences are sometimes the most exclusive facts that appear in record, for they are the logical deductions from facts and circumstances in the record, every one of which speaks with an eloquent voice. Inferences are substantial elements in the construction of evidence, and so important are they that they have been interpreted by our courts, and we quote as follows some of the definitions:

"Inferences are the conclusions drawn by reason of common sense from premises established by proof, and are as applicable to questions of intention, where the intention of the parties becomes

important, as to any other disputable fact." *American Freehold Land Mortgage Co. of London v. Pace,* 23 Tex. Civ. App., 222, 56 S. W., 377.

"An inference is the conclusion drawn by reason from premises established by proof. In a sense, it is the thing proved. Guess-work is not." *Whitehouse v. Bolster,* 95 Me., 458, 50 A., 240.

"An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect. Code Civ. Proc. Cal., 1903, Section 1958; Ann. Codes and Sts. Or., 1901, Section 783." 4 Words and Phrases, p. 3579.

The retention by the company of the policy during the period of time in which notice under the terms of the policy was to be given precluded the plaintiffs from conforming to the terms of the policy as to notice, and under weighty authority is held to be a waiver of the condition in the policy that requires written notice within a certain time. Upon this point we quote: "Withholding the policy from the assured, when possession of it is necessary for the preparation of the proofs, will estop the company from taking advantage of failure to send them in." *Caldwell v. Stadacona,* etc., (1883) 11 S. C. Can., 212; *Mitchell v. London,* etc., (1886) 12 Ont., 706; *Turly v. North American,* etc., (1840) 25 Wend. (N. Y.), 373; *Dougherty v. Metropolitan,* etc., (1896) 3 App. Div., 313, 38 N. Y. S., 258; *Sullivan v. Prudential,* etc. (1901), 63 App. Div., 280, 71 N. Y. S., 525; *Taylor v. Glen Falls,* etc., (1902) 44 Fla., 273, 32 So., 887.

Another element in the record bearing upon the

knowledge of the company with respect to the acts and conduct of Schempp after the loss is the fact that the premium paid on the policy was returned to plaintiffs by Schempp. That the policy was in the possession and control of the company in the meantime seems clear from the fact that, while Schempp took the policy from the plaintiffs, it was the defendant itself, in open court, that returned it to plaintiffs' counsel, as above stated, by which it became an exhibit in the record. Certainly there can be no inference, in view of this fact of possession and retention, that Schempp, as manager of the service company, canceled the policy and paid back the premium out of his own pocket. That is a deduction which is unreasonable, and plainly not inferable from the state of the record, for, if the company, by reason of its possession of the policy, had knowledge of some of the acts of Schempp, the probability is that it had knowledge concerning all of his acts, and this would include knowledge of the return of the premium on the denial of liability on the part of the company.

Upon this same theory the visit of Lewis, the adjuster, with Schempp, when an examination of the car after the loss was made in the presence of the plaintiffs, indicates knowledge of the act on the part of the company. That it was the directing force is a conclusion responsive to its possession during the critical stages of the life of the policy and the situation of the parties.

Therefore, in our opinion, and we are unanimous upon this point, it is clear from the record, not only in the special instances herein cited, but in many others of a similar nature throughout the

record, that the company had knowledge of all of the acts and conduct of Schempp subsequent to the casualty, who was the agent of the company at the time the policy was issued and delivered, and in considering and in reaching this conclusion we bear in mind the salient situation in the record that there was no revocation at any time subsequent to the issuance of the policy of the agency that was at least established by the statute at that time.

If we are correct in our reasoning, then the agency of Schempp did not end with the delivery of the policy, but continued with unrevoked authority throughout all of the negotiations subsequent to the loss, and consequently every act of Schempp was not only authorized but ratified, and his acts thus became the acts of the company itself.

That Schempp, if we view the record correctly, had authority to dispense with the specific terms as to notice, cannot be doubted in view of many holdings, especially the holdings of the following authorities:

"The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract.

"A waiver of any of the terms of a contract may be either by subsequent contract, written or oral, or by the acts and conduct of the parties.

"A written provision in a policy, 'No officer, agent, or adjuster, or other representative, shall have power to waive or alter any of the provisions or conditions of this policy * * * unless when

actually indorsed hereon or added hereto by such officer, agent, or adjuster,' etc., does not prevent a waiver of any provision of the policy by the acts and conduct of the insurance company by its duly authorized officers or agents.

"A waiver properly pleaded, to support which relevant proof has been offered, in a trial to a jury, becomes a question of fact for the determination of the jury, the burden of proving which by a preponderance of the evidence is upon the party relying upon the waiver." *Ohio Farmers' Ins. Co.* v. *Cochran,* 104 Ohio St., 427, 135 N. E., 537.

"*Estoppel.* During the period within which proofs must be tendered, the company may estop itself from objecting to their nonproduction, if its conduct towards the assured is calculated to inspire confidence and throw him off his guard. *Thierolf* v. *Universal, etc.,* (1885), 110 Pa., 37, 20 A., 412; *Kenton, etc.,* v. *Wigginton,* (1889), 89 Ky., 330, 12 S. W., 668, 11 Ky. Law Rep., 539. And see *Hughes* v. *Metropolitan, etc.,* (1877), 1 C. P. D., 135; 2 A. C., 439; Ewart on Estoppel, pp. 40, 103, 106, 133-126."

The fifth defense is, generally speaking, a denial of any liability under the policy, and it is also very determinative of the time in which the denial of liability began to run. In other words, was it before or after the loss? The fifth defense alleges that, long prior to the alleged loss, this defendant duly notified plaintiffs of its desire and intention to cancel the policy, and that the policy was no longer in effect, which cancellation was duly accepted by the insured. Thereafter it is alleged that the defendant duly tendered all of the premium

it had received in connection with the transaction. This defense comports with credible evidence appearing on the exhibit known as the insurance policy, for it appears thereon that, so far at least as the company was concerned, the cancellation of the policy was as of January 24, 1924. The fire occurred on June 28, 1924, a comparatively short period of time between the casualty and the issuance of the policy, as bearing upon the allegation of the answer that the defendant for a long time prior to the loss denied liability upon the policy, by attempting its cancellation and returning the premium. With such a fact in the record, conformity to the specific terms of the policy by the plaintiffs was immaterial, because it was a useless and unnecessary act, by reason of the attitude of the company in denying liability, and thus, if we are correct upon this point, the failure to furnish proofs of loss becomes a matter of immateriality. The date of cancellation on the policy, unchallenged by any other instance in the record with respect to any error in its making, establishes the status of the company with respect thereto, and is at least credible evidence of the denial of liability on the part of the company prior to the casualty.

On this question of denial we cite, out of many authorities, the following: "A denial by an insurance company of any liability upon a policy is a waiver of the requirement of written notice of and proof of loss if made within the time when such notice and proof are required by the policy to be made. *Stacy* v. *Insurance Co.*, 1 C. C., (N. S.), 441, 15 C. D., 67; *Dun* v. *Insurance Co.*, 8 N. P.,

612, 10 O. D., (N. P.), 667 [Affirmed *Insurance Co.* v. *Dun,* 52 Ohio St., 639, 44 N. E·, 1139; 4 Longsdorf's Notes, 584].''

We also quote the syllabus in *Bartley* v. *National Business Men's Association,* 109 Ohio St., 585, 143 N. E., 386: ''Where a certificate of membership in an accident association provides that 'proofs of claim shall be furnished   *   *   * within ninety days from the date of death,' etc., and also provides that 'no action shall be maintained on this certificate after the expiration of two years from the date when the final proof of claim is filed with the association; an absolute denial of liability by the association under any of the terms of the certificate made to the beneficiary within the 90-day period amounts to a waiver of filing proof of claim, and a right of action accrues upon the date of such waiver; such action cannot however be maintained after the expiration of the period of limitation provided in the certificate or policy, which in the instant case would be at most within two years and 90 days from the date of accident or death. (*Appel, Admr.,* v. *Cooper Insurance Co.,* 76 Ohio St., 52, 80 N. E., 955, 10 L. R. A., (N. S.), 674, 10 Ann. Cas., 821, followed and approved.)''

Holding these views, we think the remaining errors charged in the case become immaterial, and we find no prejudicial error therein.

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

LEVINE, P. J., and VICKERY, J., concur.