## LOSASSO v CONCORDIA FIRE INS. CO. OF MILWAUKEE

Ohio Appeals, 7th Dist, Mahoning Co

Decided Dec 3, 1940

Lipscher & Lipscher, Youngstown, for appellant.

James Modarelli, Youngstown, for appellee.

## OPINION

By PHILLIPS, J.

Plaintiff appeals on questions of law from a judgment of the court of common pleas of Mahoning County entered upon a jury verdict directed for defendant, an insurance corporation, at the close of her evidence, in her action to recover upon a policy of insurance issued to her by defendant upon her household furniture and personal effects destroyed by fire, and claims that the trial judge erred in the admission of incompetent evidence offered by defendant over her objection; in overruling her motion for a new trial, and in directing a verdict against her for the reason that the judgment of the trial court is against the weight of the evidence and contrary to law.

In her third amended petition plaintiff alleged that defendant was a corporation engaged in the insurance business; that for a money consideration it duly executed and delivered to her a policy of insurance insuring her household furniture and personal effects against loss by fire to the amount of two thousand dollars for a stated period of time; that during the life of the policy her household furniture and personal effects of a value in excess of two thousand dollars were destroyed by fire. of which loss she immediately notified defendant in writing; that thereafter she performed all of the conditions of the policy of insurance on her part to be performed; that defendant denied liability under the terms of its policy and refused to pay any part of her loss, and that by its conduct in denying liability and its action during October, November and December, 1938, and January and February, 1939, in the adjustment and investigation of her loss, it rendered the filing of a proof of loss and appraisal by her as required by the policy a useless and unnecessary thing and thereby waived the filing of those instruments.

To plaintiff's third amended petition defendant refiled its answer originally filed to her petition, and set forth eight specific defenses, too lengthy to detail here, but in the first it admitted execution and delivery of the policy of insurance, denied the unconditional insurance of plaintiff's property against loss or damage by fire in any amount whatsoever; and in substance alleged that in consideration of all of the terms,

conditions and stipulations of its policy, its agreement to insure plaintiff against loss in the amounts and for the term therein stated, and set forth the policy provisions of its liability, requirements of notice, proof, estimate, inventory, appraisal, arbitration and time of payment of loss, depreciation deduction, inspection and protection of property, origin of fire, other insurance, and time for commencement of action to compel payment, and alleged plaintiff's failure to notify it and file proof of loss in writing in accordance with the provisions of the policy.

Defendant further alleged a change in interest, title or possession of the property insured, subsequent to the issuance of the policy and prior to the fire, by a voluntary act of insured other than death, without its consent, endorsed on the policy, and contrary to the provisions thereof; the disagreement between the parties as to the amount of loss which was never ascertained by appraisers as required by the terms of the policy, the plaintiff's false statement of unconditional and sole ownership of the property and lack of endorsement thereon of consent to unconditional ownership thereof or alteration of the policy in that respect as provided by the terms thereof; the destruction of the property insured by explosion and not fire, which released it from liability; the storage of dynamite, ether, gunpowder, in excess of twenty-five pounds, nitro glycerine and other explosives not usual or incidental to plaintiff's business, without its consent and contrary to the policy provisions, by reason of all of which the fire hazard was increased without its knowledge or consent, and alleged the failure of plaintiff to file a proof of loss, ask or require arbitration in violation of the conditions and provisions of the policy prerequisite to commencement of this action by reason of all of which it was released from liability.

By reply plaintiff denied all the allegations of defendant's first defense, and change of ownership as alleged, disagreement as to the amount of loss or ascertainment thereof by appraisers;

that plaintiff falsely stated the unconditional and sole ownership of the property or lack of endorsement thereon; of consent to unconditional ownership thereof, the destruction of the insured property by explosion, the storage of any of the explosives or substances alleged in defendant's answer in violation of the policy terms, any increase in fire hazard, and reiterated in part the allegation of her third amended petition that by its conduct in denying liability and its action in adjustment and investigation of her loss it rendered the filing of a proof of loss and appraisal by her a useless and unnecessary thing; that by its actions defendant waived the filing of those instruments and was estopped to urge its defenses in those respects, or claiming that she did not comply with the policy conditions, provisions and stipulations, which by its own conduct it made useless and impossible.

There is no dispute between the parties with reference to the policy provisions alleged in defendant's answer.

The undisputed evidence is that defendant's agent from whom the policy was purchased after notice from plaintiff executed and delivered a loss report to defendant company.

Plaintiff's husband testified that he called at the office of defendant's adjuster three times during the sixty day policy required period for filing written proof of loss, the last time about the middle of November, one of which is admitted by defendant's adjuster, and on the first of which occasions he handed a list of plaintiff's lost and damaged property to the adjuster, who returned it to him, saying they wouldn't pay him a "dime" for the reason in the first place the job was purposely done, which remark defendant's adjuster denied.

In response to the question, "What are your duties; you tell these folks?", the adjuster for defendant company testified: "Well, if an assured has a fire we go out and check it over, determine a certain amount, prepare proof of loss, send it to the company, the com-

pany checks it; if they are satisfied, they in turn forward a draft to the agent and he in turn gives it to the party to whom the policy was issued."

He further testified:

"Q. When there is a fire occurs, you represent the company; I understand you to say you go out to the loss, is that right?
A. That is true.
"Q. You investigate it, as to determine the amount of the loss? A. Yes.
"Q. What else do you say you do? A. Send proof of loss to the insurance company, they in turn check it. Q. Send them to the insurance company; what else—they in turn what? A. They in turn pass upon it; if they are satisfied, they pay it.
"Q. When this insurance agent turned over the loss to you did she tell you any particular thing that you were to adjust for the purpose of inspection only, or did she turn it over to you and say 'Here is a loss, go out and adjust it'? A. She referred the policy information to us.
"Q. For what purpose? A. To notify our office of the loss.
"Q. And not to adjust it? We have that privilege; we can adjust them or not adjust them.
"Q. That is what I am trying to get. You have the privilege and authority to adjust it, or not to adjust it, is that right? A. That is true.
"Q. All right. What further then did you do in behalf of this insurance on the contents, the furniture? A. I explained to you a moment ago there was a question as to the origin; under those circumstances we do nothing."

He further testified that in the instant case he represented defendant only for the purposes of investigation, that plaintiff's husband came to his office once and he "told him very frankly to follow the terms and conditions of the policy contract."

From defendant's evidence it is clear that its own agent notified it of the occurence of the fire in accordance with the policy provisions as a result of

plaintiff's action in notifying the agent and that it conducted an investigation thereof.

This brings us forthwith to a consideration of the question whether proof of loss was furnished defendant company in accordance with the policy provisions, or was necessary under the circumstances.

Plaintiff admits that she did not mail a notice or proof of loss directly to the defendant company herself, but claims that she complied with the policy provisions when she notified defendant's agent of the fire and prepared and had her husband hand a list of her lost and damaged property to defendant's adjuster within the sixty day policy provision period, whose custom it was to prepare and send proofs of loss to the company as shown by his testimony; and further that in any event defendant waived the policy requirement of written proof of loss by her by the acts of its adjuster in denying liability and definitely saying to her husband within the sixty day period for filing proof of loss that the company wouldn't pay a "dime", and saying to her "you won't hear from me any more * * *, and you won't get a thing."

It appears to be the law that, "any denial by an insurance company of liability upon a policy is a waiver of the requirement of written notice and proof of loss, if made within the time such notice and proof are required by the policy to be made." **Lincoln Mutual Indemnity Co. v Harbold, 37 Ohio Law Rep. 260.** See also **Eureka Fire & Marine Insurance Co. v Baldwin, 62 Oh St 368, 57 N. E. 57; Bartley v National Business Men's Association, 109 Oh St 585, 143 N. E. 386; Wilson v Home Ins. Co., 6 Ohio Dec. Reprint 708;** and **People's Ins. Co. v Straehle, 13 Ohio Dec. Reprint 846.** There is authority to the effect that an "agent * * * may waive provision as to notice, if there has been substantial compliance by insured with terms of policy, or if there has been total denial of liability by insurer." **Mechanics' & Traders Ins. Co. v Himmelstein, 24 Oh Ap 29, 155 N. E. 806.**

There is conflicting and contradictory evidence on the questions of compliance with the policy provisions, of furnishing proof of loss or waiver thereof by the acts of defendant's adjuster in denying liability, and from it we believe reasonable minds could reach different conclusions ▆▆▆▆▆ ▆ and therefore those questions were presented for the determination of the jury, and we so hold. Investigation by adjuster and denial of liability by insurance company, held for jury to decide whether there has been a waiver or not. **Enterprise Insurance Co. v Parisot, 35 Oh St 35, 35 Am. Rep. 589.**

There is also a decided conflict in the evidence on the questions of appraisal and request for arbitration. Plaintiff and her witnesses claim a conference between the parties with reference to those subjects which defendant denies.

We come now to review the evidence in support of defendant's defense that the hazard insured was materially increased in violation of the policy provisions that, "this entire policy, unless otherwise provided by agreement, endorsed hereon or added hereto, shall be void—if the hazard be increased by any means within the control or knowledge of the insured," by reason of which it was released from liability to the insured. We discover no such endorsement on the policy.

The chief of the fire department of the city of Youngstown and his assistant who were at the fire scene within fifteen minutes of receipt of the alarm, and the present chief of that department, then assistant state fire marshal, testified to the extent and seriousness of the fire and a strong odor of kerosene or gasoline throughout the house, which the chief testified by test proved to be gasoline; that the overstuffed seats of the living room furniture were saturated with gasoline which were badly burned, and where the assistant fire marshal felt the fire originated.

The fire chief testified that he found "some toys, rag dolls and some drapery and something of that sort"; that the doll was "thoroughly saturated with gasoline"; that they were "smoked badly" but "were not burnt"; and the assistant fire marshal testified, "sure I was interested only in the fire, because in my opinion this was an incendiary fire or set fire, and I made a very thorough investigation as to the cause of this fire, other than the furniture; I didn't do a thing about the furniture I am not an adjuster;" and in response to the question, "You seem so definite about what was found on that piece of chair and doll baby, that is definitely fixed in your mind", answered, "yes, sure, that was arson, in my opinion," but didn't present the evidence to the grand jury because he felt "that the evidence was not sufficient to warrant a conviction of arson;" all of which plaintiff denied.

We have carefully read the record on this phase of this case and without quoting the lengthy claimed violated policy provisions which are as alleged by defendant and substantially set forth in the factual statement of this opinion, or further evidence in support of those allegations, we believe that there is such a conflict in ▆▆▆▆▆ ▆ the evidence that from it reasonable minds could reasonably reach different conclusions as to whether plaintiff had any or such knowledge of the existence of gasoline upon the premises as to know she was violating the policy provisions, or whether the insurance hazard was increased as a result of keeping, allowing or storing any of substances alleged in violation of the policy provision that: "This entire policy unless otherwise provided by agreement endorsed hereon or added hereto shall be void * * * if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises, benzine, benzole, dynamite, ether, fireworks, gasoline, Creek fire, gunpowder, exceeding twenty-five pounds in quantity, naphtha, nitro-glycerine or other explosives, phosphorus, or petroleum or any of its products of greater inflammability than kerosene oil of the United States stand-

ard (which last may be used for lights and kept for sale according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight or at a distance not less than ten feet from artificial light."

We believe therefore that the lower court erred in arresting the evidence from the consideration of the jury and directing a verdict for the defendant on this ground.

While defendant alleged in its answer a change in interest, title or possession of the property insured, subsequent to the issuance of the policy and prior to the fire, by a voluntary act of the insured other than death, without its consent endorsed on the policy and contrary to the provisions thereof, yet counsel for the defendant orally admits that the record discloses no evidence in support of this defense, and accordingly defendant does not urge this defense orally or by brief, and in view thereof we do not pass upon it.

It follows from what we have said that the judgment of the lower court must be and hereby is reversed and the cause is remanded thereto for further proceedings in accordance with law.

NICHOLS, PJ., concurs in judgment.
CARTER, J., concurs.