Ingeborg Bornas, Appellant, v. Standard Accident Insurance Company of Detroit, Michigan, Respondent.

Demostan Bornas, Appellant, v. Standard Accident Insurance Company of Detroit, Michigan, Respondent.

Fourth Department, March 21, 1958.

*Delon F. Mousaw* for appellants.

*John B. Hudson* for respondent.

BASTOW, J. The plaintiffs appeal from a judgment entered upon a verdict of a jury directed by the court at the close of the evidence in favor of the defendant dismissing the complaints of the respective plaintiffs. The latter had recovered judgments against one Gladys Howell based upon her negligent operation of an automobile resulting in personal injuries and property damage to the plaintiffs. The present actions were brought against the defendant pursuant to the provision of paragraph (b) of subdivision 1 of section 167 of the Insurance Law. There were two principal issues litigated upon the trial both relating to provisions of a policy issued to one Miller Howell. The first was whether or not the policy had been canceled prior to the date of accident the happening of which was the gravamen of the actions wherein the judgments were recovered. The second, and it was upon this issue that the court directed a verdict, was whether notice of the accident had been effectively given to the defendant.

In August, 1951 Miller Howell applied to the New York Automobile Assigned Risk Plan for liability insurance upon a

motor vehicle owned by him. (See Insurance Law, § 63.) He designated as producer of record for the insurance one Charles W. Crandall, an insurance agent licensed by this State. The risk was assigned to the defendant which issued a policy to Howell on August 30, 1951. Pursuant to section 13 of the plan this risk could be assigned to defendant for a period of not more than three years. Annual renewals in the form of a new policy were issued to Howell the last one being dated August 30, 1953 for a period of one year. There was proof that the original policy and renewals thereof were sent by defendant to Crandall who delivered them to Howell. On the policy in evidence Crandall in his handwriting had receipted in full for the premium.

It is not disputed that the insured, Miller Howell, died intestate on December 31, 1953. He was survived by four adult children, one of whom was Floyd Howell, the husband of Gladys Howell to whom reference has been made. Upon the present trial there was evidence from which the jury could have found that during his last illness in a hospital the insured gave the automobile keys and registration to Mrs. Howell with permission express or implied to operate the vehicle. Some 25 days after Howell's death and while his daughter-in-law was operating the vehicle it was in collision with an automobile owned by the plaintiff, Demostan Bornas, resulting in the personal injuries and property damage for which judgments were obtained against Mrs. Howell.

It further appeared upon the trial that after the death of the insured and before the date of the accident Mrs. Howell delivered the then subsisting policy to Crandall, the original producer of record, who sent it to the defendant with a writing that the policy had been surrendered to him for cancellation because the insured was dead. It was further requested that " if possible " unearned premium be sent to Mrs. Howell — " If not make check payable to Miller M. Howell, deceased ". The company did neither. It sent its check for the unearned premium ($32.31) payable to Crandall to the latter who in turn sent Mrs. Howell his check payable to her for this amount plus 10% thereof representing the commission he had originally received on this sum. Mrs. Howell cashed the check. The policy was thereafter physically destroyed by the defendant.

Upon the trial the original policy issued in August, 1951 was received in evidence upon stipulation of the parties that it was identical to the destroyed policy except for the date thereof, the insuring period, the identity of the automobile covered and the address of the insured. We turn to the policy to see what

coverage was provided in the event of the death of the named insured. Condition 16 provides in part that if "the named insured shall die * * * within the policy period, this policy, unless canceled, shall, if written notice be given to the company within sixty days after the date of such death * * * cover (1) the named insured's legal representative as the named insured, and (2) under coverages A and B (Liability for bodily injury and property damage) subject otherwise to the provisions of Insuring Agreement III (definition of insured), any person having proper temporary custody of the automobile, as an insured". Thus, it appears from this provision that unless the policy was canceled the insurance coverage continued unchanged for a period of 60 days. Coverage was afforded by the policy to the named insured and any person using the automobile with his permission, express or implied (Insurance Law, § 167, subd. 2), and also under the quoted condition "any person having proper temporary custody of the automobile" was similarly covered for 60 days and thereafter if the required notice was given. Upon the present record a factual issue was presented for the jury as to whether Mrs. Howell at the time of the accident, which happened within 60 days after the death of the named insured, was operating the car with the permission of the insured which had been given in his lifetime or was a person having proper temporary possession of the automobile. In either event she would be entitled to coverage under the policy.

It is the claim of the defendant, however, that the policy was canceled prior to the date of the accident. The sole provision relating thereto is found in condition 17 which states that "This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancelation shall be effective." There was further provision, here immaterial, for cancelation of the policy by the company. After the death of the insured only his legal representative or possibly the joint action of his distributees could have effectively canceled the policy on behalf of the insured. An administrator was not appointed until December 30, 1954 — a year after the death of the insured. Mrs. Howell, who was not even a distributee, had no authority upon the evidence in this record to do so and the act of the defendant in purporting to cancel upon her request was a nullity. The trial court in passing upon the motion for a directed verdict so held and we concur in its decision on this phase of the case.

The trial court, however, granted defendant's motion for a directed verdict upon the ground that plaintiffs had failed to

prove that notice of the happening of the accident had been given to the defendant in accordance with the provisions of the policy. Condition 6 provided in part that "when an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable." There was evidence upon the trial that within a short period after the accident the daughter-in-law, Mrs. Howell, called Mr. Crandall, who a few days before had participated in the abortive attempt to cancel the policy, and told him about the accident giving details as to where it occurred and who was involved. Crandall told her there was no coverage and took no action to notify the defendant.

There was clear proof upon the trial that Crandall was not the licensed agent of the defendant and had no agency contract with it. When application was made for the policy in 1951 Crandall was described as the producer of the risk. Neither the Insurance Law nor the plan approved by the Superintendent of Insurance pursuant to section 63 of the Insurance Law attempts to state the relationship among the producer of the risk, the insured and the insurer. Subdivision 5 of section 115 of the Insurance Law, however, authorizes an insurer participating in the plan to pay a commission "to an adequately qualified agent who is licensed to act as agent for any insurer participating in such plan * * * when such agent is designated by the assured as the producer of record". Presumably this exception is made because subdivision 1 of the same section prohibits an insurer from paying commissions except to a licensed agent of such insurer or to one holding a license to act for any authorized insurer.

Assuming, without deciding, that the initial relationship between Howell, the applicant, and Crandall, the producer of record, was that of principal and agent it does not follow that the insurer could not have subsequently authorized Crandall expressly or by implication to act as its agent for matters other than the solicitation of business and collection of commissions. "The term 'agent' has been held to include any one who in any manner aids the insurer in transacting the business, and is not limited to such agents as procure and solicit policies" (16 Appleman on Insurance Law & Practice, § 8671). Moreover, "Who are agents of the company, and whether brokers and agents are the representatives of the insured or of the insurers, and what is the extent of their authority, are questions of fact to be determined by the circumstances of each case". (3 Richards on Insurance [5th ed.], § 476.)

The policy here under consideration, as has been stated, was stipulated to be an exact duplicate, except for matters here immaterial, of the contract surrendered to defendant and destroyed by it. On the face of the policy and in the upper left-hand corner there is printed the word " agent " with a printed line thereunder. Upon that line is typed the name " Charles W. Crandall." The policy obviously was prepared by the defendant and no claim is made by defendant that Crandall's name was not inserted by the defendant when the policy was written. This, together with the other evidence in the case, presented a factual issue that should have been submitted to the jury which might have found that this constituted an admission by defendant that Crandall was its agent. In *Lewis* v. *Guardian Fire & Life Assur. Co.* (181 N. Y. 392) a similar question of agency arose and the insurer claimed there was no evidence sufficient to warrant such a finding. In rejecting the claim the court said (p. 395): " Without referring to the other evidence in this respect it is a sufficient answer to this claim to say that on the policy delivered by the appellant there was written in two places, one on the face of the policy, one on its back, ' Patterson & Son, Agents,' and it is conceded that this was done not by the agents but by the officers of the company in its office. It is true that some of the officers or clerks of the company testified that it was the habit of the company whenever an application was presented to it through brokers to so write the name of the brokers as agents on the policy, and that it was not intended to state by such indorsement that the brokers were in fact the agents of the company. This explanation, however, of what otherwise appeared to be an admission that Patterson & Son were the agents of the defendant was not conclusive; it presented a question of fact to be passed on by the jury." (See, also, *Smith Lumber Co.* v. *Colonial Assur. Co.,* 172 App. Div. 149, 151.)

If the triers of the fact should decide that defendant had authorized Crandall to act as its agent or was estopped from denying his agency by its course of conduct then additional factual issues would arise. Upon the evidence presented at the trial it would be for the jury to determine if there had been a compliance with the policy provision in that notice of the accident was given to an authorized agent of the defendant. There was no refutation of Crandall's testimony that he was given such notice by Mrs. Howell and informed her that the policy had been canceled.

Since we have found that there had been no valid cancellation a further question is presented as to whether the company

could assert the defense of failure to give notice of the accident in view of the fact that it had repudiated liability on the ground the contract had ceased to exist. It is familiar law that "A repudiation of liability by an insurance company excuses the insured from further performance on his part of the conditions of the policies" (*Beckley* v. *Otsego County Farmers Coop. Fire Ins. Co.*, 3 A D 2d 190, 194 and cases therein cited, appeal dismissed 2 N Y 2d 990; see, also, *Orr* v. *National Fire Ins. Co.*, 52 S. D. 513, 514; *Mechanics' & Traders' Ins. Co.* v. *Himmelstein*, 24 Ohio App. 29, 42; *Poch* v. *Equitable Life Assur. Soc.*, 343 Pa. 119, 129). To the plaint of the defendant that Mrs. Howell, in view of her attempt to cancel the policy, should not be recognized as an insured thereunder it is only necessary to quote from *Lauritano* v. *American Fire Ins. Co.* (3 A D 2d 564, 567): "At one time, the liability insurance policy was regarded as the concern only of the insured and his insurer, as exclusive parties to the contract. Any act or omission by the insured which would have released his insurer from liability would inevitably have precluded recovery by those whose claims against the insurer were wholly derivative. However, the Legislature, recognizing that an injured party, while not privy to the insurance contract, had a genuine interest in it and should be enabled to invoke its protection, enacted section 109 of the Insurance Law, forerunner of the present section 167, to create, as its heading indicates, an independent right of the injured person to proceed directly against the liability insurer (L. 1917, ch. 524). Successive amendments have profoundly altered what was once commonly accepted — that the liability policy existed solely for the protection of the insured."

The trial court held as a matter of law that Crandall, as the producer of record, represented the deceased insured and did not represent the defendant and directed a verdict in favor of the latter. In taking such action the court was bound to take that view of the evidence most favorable to the plaintiffs and from the evidence and the inferences reasonably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the plaintiffs. (*Wearever Upholstery & Furniture Corp.* v. *Home Ins. Co.*, 286 App. Div. 93, 95.) In other words the trial court found "that by no rational process could the trier of the facts base a finding in favor of the [plaintiffs] upon the evidence here presented." (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 245.) In our opinion there was evidence from which inferences could have been drawn to justify a finding that the defendant had constituted Crandall as its agent and that notice of the accident given to Crandall

was in fact notice to the defendant or in the alternative that the defendant's denial of any liability upon the ground that the policy had been canceled relieved the insured from the duty of further action.

The judgments and orders appealed from should be reversed and a new trial granted.

All concur, except McCurn, P. J., and Kimball, J., who dissent and vote for affirmance on the ground that there is no evidence to support a finding that Crandall was the agent of the defendant insurance company.  Present — McCurn, P. J., Kimball, Bastow, Goldman and Halpern, JJ.

Judgments and orders reversed on the law and facts and a new trial granted, with costs to the appellants to abide the event.